

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed October 17, 2011**

---

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | Case No. 09-34784-SGJ |
| ONDOVA LIMITED COMPANY, | § § | (Chapter 11) |
| Debtor. | § § | |
| DANIEL J. SHERMAN, CHAPTER 11 TRUSTEE | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Adversary Proc. No. 11-03181 |
| MIKE EMKE and SERVERS, INC., | § § § | |
| Defendants. | § | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER**

At Dallas Texas, in said district on the 22nd and 23rd day of September, 2011, the Court conducted a trial of those portions of the above-referenced adversary proceeding that were not subject to the withdrawal of the reference ordered on August 22, 2011.

1. Based on the evidence presented before the Court, the Court finds in favor of Daniel J. Sherman, Trustee. The following are the Court's Findings of Fact, Conclusions of Law and Order with respect to Counts 1, 2, and 5 of this action. All findings of fact which

constitute conclusions of law, and all conclusions of law which also constitute findings of fact, shall be treated as same herein.

2. The Court has jurisdiction over these counts, pursuant to 28 U.S.C. Section 1334. These matters are core proceedings, pursuant to 28 U.S.C. Section 157(b).

3. The parties have stipulated that the Agreement for <Servers.com> ("Settlement Agreement"), which was introduced into evidence as Trustee's Exhibit 1, was signed by the parties on July 6, 2009 and is enforceable. On July 6, 2009, specifically, Mike Emke ("Emke") and Ondova Limited Company ("Debtor" or "Ondova") settled their various claims against one another and executed the Settlement Agreement.

4. The Settlement Agreement settled litigation that was commenced in 2006 in the United States District Court for Northern District of Texas, which litigation was between Emke and Compana, LLC, an alias for Ondova. This was actually one of several lawsuits between Emke and Ondova dating back for approximately six years, relating to a dispute over ownership of the internet domain name "Servers.com" (the "Domain Name"), which Ondova registered sometime in or after 2002 when the Domain Name became available for registration. Prior lawsuits between Emke and Ondova regarding the Domain Name that were filed in Texas and Nevada had previously been dismissed or transferred for venue or other jurisdictional issues.

5. On July 27, 2009, soon after entry into the Settlement Agreement, Ondova filed its Chapter 11 bankruptcy case. On August 10, 2009, Servers, Inc., an entity that had been specifically created pursuant to the Settlement Agreement and co-owned by Emke and Ondova, was incorporated by Conrad Herring ("Herring"), Emke's attorney. Herring designated himself at that time as sole officer and director of Servers, Inc.

6. On September 17, 2009, the Court appointed Daniel Sherman as a Chapter 11 Trustee ("Trustee") over Ondova, and Sherman is the plaintiff in this adversary proceeding.

7. In late October 2009, the Trustee first communicated with Emke and initial discussions regarding the Settlement Agreement and the Domain Name took place. The

Trustee became aware that a $2,000 payment of start-up capital had been previously forwarded by Ondova through its attorney, Mr. Altman, purporting to act for Ondova or Jeff Baron ("Baron"). The Domain Name, however, had not yet been transferred to the entity created under the Settlement Agreement to hold the Domain Name, Servers, Inc. In January 2010 the Domain Name was transferred by Ondova at the direction of the Trustee to the corporation which was established pursuant to the Settlement Agreement, Servers, Inc. Servers, Inc. continues to hold legal title to the Domain Name.

8. The Trustee became aware that certain development requirements under the Settlement Agreement, which were the responsibility of Emke, had not been met. The Settlement Agreement provides that Emke is responsible for the primary role in developing a business plan and model. Certain specific obligations of Emke were as follows: (a) Emke was to design and develop a new internet website at the URL "Servers.com," which will serve as a sales and marketing platform for the business; (b) Emke was to use his best efforts to develop the website platform in a reasonable amount of time; (c) Emke was obligated to create the business plan and model requiring, among other things, researching and identifying small web hosting businesses currently in operation and purchasing and bringing such businesses under the Servers.com brand; (d) Emke was responsible for identifying and negotiating the purchase of the web-hosting companies and for securing the financing to purchase the web-hosting companies; and (e) Ondova had, in its discretion, an ability to suggest to Emke potential hosting companies for evaluation and purpose. Emke's contractual duties for developing the business were also set forth in Section 3 of the Settlement Agreement as follows: "Emke shall be responsible for all business-related activities and shall use his best efforts to promote develop the business." To further clarify that Emke was solely responsible for all business operations, as opposed to Ondova, Section 3 of the Settlement Agreement further stated, "Compana shall not be responsible to actively participate in the management activities of the Servers.com business or website."

9. The evidence showed that at the time of the initial communications between Trustee and Emke in late October 2009 no written business model and plan had been prepared by Emke. Also, no verifiable progress had been made by Emke to locate web-hosting companies to bring into the Servers.com brand. No demonstrable negotiations had occurred to purchase web-hosting companies. Emke had failed to obtain financing in order to purchase web-hosting companies. The totality of the facts demonstrated Emke had not met any of the obligations of the Settlement Agreement. The Trustee was advised that Emke, despite his not developing a written business plan or having accomplished any of the articulated elements of the business plan for Servers, Inc. thus far, desired to continue efforts to fulfill the requirements of the Settlement Agreement. As part of these efforts, though, Emke advised there would be a need for financing and asked whether Trustee could advance or possibly borrow funds to deliver to Emke so that he could perform his duties. Sherman advised Emke that due to the fact that Trustee was the trustee over a Chapter 11 debtor in a bankruptcy case, he was unable to borrow funds to advance for these purposes. Nonetheless, Emke advised the Trustee that he was going to continue his efforts in order that he could fulfill his duties under the Settlement Agreement.

10. The Trustee had been advised by his consultant in the Ondova case, Damon Nelson, that the Domain Name might have substantial value in a sale transaction. The Trustee communicated to Emke the Trustee's interest in considering a sale of the Domain Name due to its potentially high value. However, it appears from the evidence that Emke did not express interest in conducting a sale of the Domain Name, but rather sought to attempt further efforts to develop the Domain Name, obtain financing, and fulfill other duties under the Settlement Agreement. Notwithstanding Trustee's preference to conduct the sale of the Domain Name, the Trustee agreed to allow Emke an opportunity to fulfill his duties under the Settlement Agreement.

11. Then throughout many months in 2010, the Trustee's primary focus turned to the settlement of the complex litigation that Ondova and Baron had been consumed in for many years with Netsphere, Inc. and Manila Industries, Inc. and other parties. During this time the Trustee had occasional discussions with Emke and at one point Emke had indicated some interest in consenting to a sale of the Domain Name. However, Emke conditioned his consent to obtaining more than 50 percent of the sale proceeds.

12. Notwithstanding the fact that the Trustee provided Emke with an extended period of time to perform his duties and obligations under the Settlement Agreement, the Trustee eventually determined that Emke failed to achieve any of the obligations contractually required of him. It appeared to the Trustee that Emke was incapable of fulfilling any of his duties. Ultimately, after well over a year of Emke having a chance to fulfill his duties under the Settlement Agreement, the Trustee became frustrated with the lack of progress by Emke and Emke's demand for a larger share of the sale proceeds than 50 percent as specifically provided for in the Settlement Agreement.

13. The Trustee thereafter commenced this adversary proceeding to sell the Domain Name and seek other related relief. The Court notes that the Settlement Agreement could have provided Emke with a larger share of sale proceeds upon a sale, but it did not. Fifty percent is what the parties agreed to.

14. Herring, the original sole director and president of Servers, Inc., resigned from both of those positions in June 2011. Before his resignation and at Trustee's request, Herring caused Servers, Inc. to issue shares in Servers, Inc. to Trustee and Emke. The Trustee now owns 50 percent of the shares of Servers, Inc. and Emke owns 50 percent of the shares of Servers, Inc. Because Emke and Trustee own 100 percent of the shares of Servers, Inc., they jointly exercise complete control over it.

15. In Section 6 of the Settlement Agreement, Emke and Ondova agreed to the liquidation of the Domain Name and the distribution of the proceeds to them individually if there

were a disagreement about Emke's management of the Servers, Inc.  Emke and Ondova additionally agreed to the return of the domain to Emke and Baron, as set forth in Section 4 of the Settlement Agreement, in certain situations.  Section 4 of the Settlement Agreement also granted Emke and Ondova a first lien security interest in the Domain Name in certain situations.  The Court notes that those provisions appear to be unenforceable <u>ipso</u> <u>facto</u> clauses under Section 365 of the Bankruptcy Code.  Other provisions of the Settlement Agreement which are enforceable bind both Emke and Ondova as the 100-percent shareholders of Servers, Inc. with respect to what occurs in the event of disagreements about Emke's performance.  These provisions give the Trustee an equitable undivided interest in the Domain Name.

16. The Court agrees with the Trustee's contention that partition in kind of the Domain Name is **impracticable**.  A sale of Trustee's undivided interest in the Domain Name would realize significantly less for the Ondova bankruptcy estate than a sale free of Emke's interest and Servers, Inc.'s interest.  According to all the credible evidence before the Court, the Domain Name has liquidation value in excess of value of the future revenue stream it might be able to generate for Servers, Inc.  Because neither Servers, Inc. nor Emke derives any substantial income from the Domain Name, there is no detriment to Emke or Servers, Inc. in the liquidation of the Domain Name free of Emke's interest and Servers, Inc.'s interest.  Finally, the Domain Name is not used for the production, transmission, or distribution or sale of electric energy, or of natural or synthetic gas for heat, light, or power and therefore there are no implications with respect to Section 363(h)(4) of the Bankruptcy Code.

17. Section 6 of the Settlement Agreement provides that the proceeds of any sale will be divided equally.  The Court finds that Emke breached his obligations under Section 6 of the Settlement Agreement by refusing to agree to a sale unless Emke received more than 50 percent of the proceeds.  Clearly, the Domain Name has a special and peculiar nature and value and therefore damages from it, from a failure to sell it, are not readily measurable.

18. Herring, as mentioned earlier, was the sole director and president of Servers, Inc. for more than a year. During that time the Court finds that Herring was acting as Emke's agent and was under Emke's control. During the period that Emke, through Herring, controlled Servers, Inc., the Court finds that Emke failed to make any reasonable efforts to develop the revenue potential of the Domain Name, which, of course, was the only asset of Servers, Inc. Emke's failure to take reasonable steps to develop the revenue potential of the Domain Name constituted a breach of his duty to Servers, Inc. Following Herring's resignation, the Trustee and Emke elected themselves directors of Servers, Inc. Since their election as directors of Servers, Inc., Trustee and Emke have reached an impasse on any and all matters, including the election of officers for Servers, Inc.

19. The Settlement Agreement does not contain any specific information concerning the time, place, or method of a mediation, does not contain any specific provision establishing the venue for an arbitration proceeding, or the rules under which such an arbitration would be conducted. The Settlement Agreement also does not contain an enforceable provision concerning the selection of arbiters. As a result of the lack of specificity, mediation followed by arbitration, as provided in the Settlement Agreement, would interfere with the expeditious and equitable distribution of assets of the Ondova bankruptcy estate. It appears that the only way to resolve disputes concerning venue, selection of arbiters and rules of arbitration, is through litigation, meaning that before the parties could even mediate, they would be involved in a lawsuit. Mediation and arbitration under all the circumstances would delay rather than expedite resolution of the disputes between the parties.

20. The Court believes that the sale of the Domain Name would realize the most value if marketed and sold by a large and reputable broker in the business of selling internet domain names. The broker recommended by the Trustee to market and sell the Domain Name is Sedo.com, LLC. The Court finds, based on the evidence presented, that Sedo.com, LLC has extensive experience in the sale of internet domain names.

In light of the evidence presented in the case as set forth in the record and as summarized in the above Findings of Fact, the Court hereby rules as follows:

21. To the extent the claim**s** as between the parties arise out of their contractual relationship, the laws of the State of Texas govern those claims. To the extent the claims of the parties concern the dissolution of Servers, Inc., the laws of the State of Nevada govern those claims.

22. The parties have stipulated that the Settlement Agreement introduced in evidence as Trustee's Exhibit 1 was signed by the parties on July 6, 2009 and is enforceable. The prerequisites for a sale under Section 363(h) of the Bankruptcy Code have been satisfied with respect to a sale of the Domain Name. There is no adequate remedy at law for Emke's breach of Section 6 of the Settlement Agreement.

23. The Trustee is entitled to the remedy of specific performance for Emke's breach of Section 6 of the Settlement Agreement. The Domain Name should be sold. It appears to the Court that the broker recommended by the Trustee, Sedo.com, LLC, is best suited to sell the Domain Name.

24. The existing impasse between Emke and Trustee justifies the appointment of a receiver for Servers, Inc. to wind up its affairs under Section 78.650 of the Nevada Revised Statutes. The Court concludes the Trustee is qualified under Section 78.650 of the Nevada Revised Statutes to act as a receiver for Servers, Inc. The Trustee's appointment as a receiver or, really, the liquidating agent is in the best interests of Servers, Inc. The Court shall enter a separate Order in this adversary proceeding specifically appointing the Trustee as receiver for Servers, Inc., which Order the Trustee may present to third-parties in connection with the Trustee's winding up of Servers, Inc.'s affairs.

25. Additionally, as sought in Count 5 of the Trustee's Amended Complaint, the Trustee is entitled to judgment against Emke for the Trustee's reasonable attorney's fees arising from and related to his dispute with Emke and this adversary proceeding. The Court will decide,

at a later hearing, the attorney's fees awarded to the Trustee as well as sanctions against Emke to which the Trustee may be entitled in connection with his pending Motion to Compel Responses to Discovery Requests filed on July 18, 2011.  The Settlement Agreement does not contain an exclusive remedies provision and the Trustee can both compel a sale and possibly recover damages incurred prior to sale.  The Trustee's claims for both specific performance of the Settlement Agreement and for damages for breach of the Settlement Agreement are claims for which attorney's fees are recoverable under Chapter 38 of the Texas Civil Practice and Remedies Code.  As noted above, the Court will hold a further hearing to decide the attorney's fees issues, as well as further sanctions that may be appropriate under the pending motion to compel.

26. With respect to the arbitration and mediation provisions the Court addressed, based on the findings of fact the Court has made, the mediation and arbitration provisions of the Settlement Agreement are not enforceable against Trustee, under the holdings of *In re National Gypsum Company*, 118 F.3d 1056 (5th Cir. 1997) and *In re Gandy,* 299 F.3d 489 (5th Cir. 2002).

27. With respect to Emke's claim of a right of first refusal, Section 6 of the Settlement Agreement provides alternative means of liquidating the Domain Name, including an outright sale of the name to a third party or a buyout by one party of the other.  The existence of a remedy for out-right sale is inconsistent with the right of first refusal claimed by Emke.  And therefore no such right of first refusal exists.  Moreover, even if such a right does exist, the Court concludes that Emke has not offered a legitimate buyout offer.  Emke testified he believes the Domain Name has a value of $5 million.  Emke has not offered the Trustee one-half of that amount or shown the financial wherewithal to offer one half of that amount.  Trustee's Count 1, requesting a sale under Section 363(h) of the Bankruptcy Code, requires that the Court approve a sale on specific terms.  Emke's Counterclaim 4 requests precisely the same relief already requested by the Trustee.

28. Based on the foregoing, the Court orders judgment in favor of Trustee on Counts 1, 2, and 5 of the Amended Complaint, as follows:

    (1) The Trustee is appointed Receiver over Servers, Inc. and shall wind up its affairs pursuant to Section 78.650 of the Nevada Revised Statutes and shall take any and all steps necessary to wind up and dissolve Servers, Inc. A separate order shall also be entered by this Court designating the Trustee as the Receiver.

    (2) The Domain Name shall be sold pursuant to Section 363(h) of the Bankruptcy Code and the Trustee, in his sole discretion, may negotiate the manner and the terms of the sale.

    (3) Emke shall not interfere with the sale effort or have the ability to object to the sale of the Domain Name.

    (4) The sale proceeds from the sale of the Domain Name shall be paid to the Trustee from the Domain Name sale, however the following costs shall be deducted from the sale proceeds before any further allocation:

        a. The payment of broker commission and expenses as well as the Trustee's other fees, costs, and expenses related to, or arising from, the sale of the Domain Name; and

        b. The payment of all costs, fees and expenses and, if applicable, taxes, related to winding up and dissolving Servers, Inc.

    (5) The balance remaining after payment of the above costs from the Domain Name sale proceeds will be divided evenly between the Trustee and Emke subject to Paragraph 6 below.

    (6) The reimbursement and payment of attorneys' fees and expenses awarded to the Trustee pursuant to Count 5 of the Amended Complaint, as well as any sanctions against Emke awarded pursuant to Trustee's Motion to Compel, shall be deducted from Emke's portion of the net sales proceeds and said amounts shall be retained by the Trustee. Following this reduction from Emke's portion retained by the Trustee, Emke shall then be entitled to receive the net amount remaining from his portion of the Domain Name sale proceeds.

29. The Court reserves the right to supplement or amend these findings of fact and conclusions of law.

IT IS SO ORDERED.

### END OF ORDER ###

Submitted by:

Raymond J. Urbanik
Texas Bar No. 20414050
Richard Hunt
Texas Bar No. 10288700
**MUNSCH HARDT KOPF & HARR, P.C.**
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone:   (214) 855-7500
Facsimile:    (214) 855-7584
rurbanik@munsch.com
rhunt@munsch.com

*ATTORNEYS FOR DANIEL J. SHERMAN,*
*CHAPTER 11 TRUSTEE*